UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| CHASTITY KRAH, | ) |
|       Plaintiff, | ) |
| v. | ) |
| COUNTY OF LINCOLN, MAINE, | ) |
| Hamilton Meserve, in his official capacity, | ) |
| William Blodgett, in his official capacity, | ) |
| Mary Trescott, in her official capacity | ) |
| STATE OF MAINE, Office of the | ) |
|    Attorney General, | ) |
| Geoffrey Rushlau, individually, and | ) |
| Andrew Wright, individually | ) |
|       Defendants. | ) |

## COMPLAINT AND JURY TRIAL DEMAND

NOW COMES Plaintiff Chastity Krah, by counsel, who complains against Defendants County of Lincoln, Maine and Hamilton Meserve, William Blodgett, and Mary Trescott in their official capacities as Lincoln County Commissioners; and against the State of Maine and Geoffrey Rushlau and Andrew Wright, individually, as follows:

## SUMMARY OF THE ACTION

1. While working as a Victim Witness Advocate in the Lincoln County District Attorney's Office in Wiscasset, Plaintiff Chastity Krah

1

was subjected to unlawful sex discrimination, a hostile and abusive work environment because of her sex, and violations of her Equal Protection and First Amendment constitutional rights.  Ms. Krah was repeatedly sexually harassed by her supervisor, Defendant and former Assistant District Attorney Andrew Wright. When Ms. Krah made it clear she was not interested in maintaining a sexual relationship with him, Mr. Wright misled and manipulated his boss, Defendant Geoffrey Rushlau (the current District Attorney for Lincoln, Sagadahoc, and Knox Counties) and sabotaged Ms. Krah's employment.  Mr. Wright's revenge culminated on December 5, 2014 when he, Mr. Rushlau, and another Assistant District Attorney confronted Ms. Krah under false and misleading pretenses and pressured her to resign under threat of termination.  Meanwhile, Ms. Krah's actual employer, Lincoln County, remained deliberately indifferent to Ms. Krah's civil rights and its basic duties as her employer, particularly on and immediately after the day she was compelled to resign.  As a result of the defendants' intentional discrimination, retaliation, hostility, and deliberate indifference, Ms. Krah is seeking all available remedies, including back pay and benefits, reinstatement or front pay in lieu of reinstatement, compensatory damages, punitive damages (against Wright and Rushlau), and attorney's fees and costs of suit.

## PARTIES

2. Plaintiff Chastity Krah is a resident of Newcastle, County of Lincoln, Maine. She was employed as a Victim Witness Advocate by Lincoln County between April 2008 and December 5, 2014.

3. The County is a political division of the State. 1 M.R.S. § 7.

4. The Commissioners are County Officers. 30-A M.R.S. § 1.

5. The Office of the Attorney General is a department of state government and employed Defendants Rushlau and Wright.

6. Geoffrey Rushlau serves as the District Attorney for Prosecutorial District Number 6, comprised of the counties of Knox, Lincoln, Sagadahoc and Waldo. He is an employee of State of Maine and serves under the general authority vested in 30-A M.R.S. 256.

7. Andrew Wright served as an Assistant District Attorney between 2005 and July 2015. Until his separation from employment in July 2015, he was an employee of State and served under the general authority vested in 30-A M.R.S. 272. Mr. Wright supervised Plaintiff.

## JURISDICTION AND VENUE

8. This action arises under the Maine Human Rights Act, 5 M.R.S. §§ 4551-4634, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the First and Fourteenth Amendment to the United States Constitution via 42 U.S.C. § 1983. This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1341.

9. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b) (2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because the events at issue occurred in Lincoln County.

## JURY TRIAL DEMAND

10. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## FACTUAL ALLEGATIONS

11. Between April 2008 and December 5, 2014, Plaintiff was employed by the County of Lincoln, Maine, where she worked as a Victim Witness Advocate at the Lincoln County District Attorney's Office in Wiscassett, Maine.

12. In the fall of 2012 Plaintiff had a brief relationship with an attorney from the Mid-Coast area who was well known in the District Attorney's office.  At no point during this time were Plaintiff and this attorney ever involved in any cases together.  During this time people in the office, including ADA Wright, knew that Plaintiff was "seeing" this attorney.  At no point did anyone in the Lincoln County Administrator's Office or District Attorney's office protest or question the relationship.

13. ADA Wright began teasing Plaintiff about the relationship and made inappropriate comments around her co-workers. He texted

Plaintiff while she was working and asked her if she was sleeping with this person. Plaintiff refused to answer and asked him to stop.

14. Before her relationship ended with the attorney that fall, ADA Wright started making unwelcome sexual advances toward her and inappropriate sexually charged comments directed at her.

15. In the fall of 2013, ADA Wright became ill and temporarily stopped contacting Plaintiff. When he recovered in the spring of 2014, he resumed making sexually inappropriate comments to Plaintiff. He texted Plaintiff several times a day for weeks at a time.

16. In the late spring of 2014, ADA Wright asked Plaintiff to meet him in the basement of the Lincoln County Courthouse in the law library. When she agreed to meet him there, ADA Wright made sexual advances. Due to a combination of factors, including a lapse in judgment on her part and ADA Wright's persistence, Plaintiff reluctantly gave in and let him kiss her. He persisted and asked her to pull her pants down. She said no. Plaintiff felt pressured and confused.

17. Over the next several days, ADA Wright pressured Plaintiff to meet him in the law library again. Reluctantly she agreed to meet with him. ADA Wright again made sexual advances and asked Plaintiff to perform oral sex on him. Plaintiff felt intimidated and did so reluctantly.

18. Throughout the course of the spring of 2014, Plaintiff met him at the law library under similar circumstances for a total of three or four

times. She felt pressured to do it. She believed ADA Wright would stop when he realized she was not interested in him.

19. Plaintiff believed there was no one at the office she could confide in and no one she felt she could trust. All this happened during regular working hours. Plaintiff felt humiliated and degraded and deeply regretted the sexual encounters with ADA Wright.

20. Plaintiff pleaded with ADA Wright to stop many times. She told him several times that she didn't want to engage in any sexual acts anymore and repeatedly asked him to leave her alone. Plaintiff told ADA Wright she had no interest in a romantic relationship. Despite these facts, Plaintiff was still very nervous about "crossing him."

21. Because Plaintiff believed she couldn't trust anyone and was very confused about what, if anything, she could do, Plaintiff ignored ADA Wright. At one point, she looked for other employment.

22. By the early summer of 2014, ADA Wright finally relented after Plaintiff continued to ignore him. However, Plaintiff quickly noticed ADA Wright was treating her differently. She felt very uncomfortable because she perceived him to be quite angry with her. One of Plaintiff's colleagues told her that ADA Wright told her that Plaintiff was a "liar" and wrote other very hurtful things about her in text messages to that colleague. Her colleague also said that anything she had ever told him in confidence he's repeated to everyone else in the office.

23. Because she was upset about what ADA Wright said to her colleague, Plaintiff e-mailed the Deputy District Attorney in late June or early July 2014 and told him about ADA Wright's comments to her co-worker, how upset she was, and that she was ready to quit. Plaintiff asked him to do something. His response was something to the effect "let mefrom the Deputy District Attorney about this. The work environment remained tense in the office for weeks.

24. Things remained this way until the October 2014 Maine Prosecutor's conference, at which time ADA Wright began texting Plaintiff again. ADA Wright asked Plaintiff to "show him how [she] looked in person" and wanted her to spend time with him at the conference. Again, Plaintiff told him to stop and ignored him.

25. Both nights of the conference ADA Wright banged on Plaintiff's door very late. Plaintiff pretended to not hear him.

26. Plaintiff worried ADA Wright's behavior would not change. Even so, she tried to do her job, and just hoped as usual it would just stop.

27. On December 5, 2014, DA Rushlau came into the office and asked Plaintiff to meet with him in the back office. With him was ADA Wright and another Assistant DA. DA Rushlau immediately accused Plaintiff of lying about her relationship two years prior (with the Mid-Coast attorney), saying that she lied about sleeping with him, and that for two years Plaintiff had an ongoing relationship with that same attorney.

7

28. DA Rushlau then pulled out a draft of a very personal letter that Plaintiff drafted but never sent to the attorney she had dated two years prior. The draft letter remained on her computer's hard drive, and Mr. Wright retrieved the letter after obtaining Plaintiff's password.

29. Plaintiff was stunned and embarassed. DA Rushlau told Plaintiff that if she did not resign he would "dismiss" her immediately. Plaintiff could only manage to say "sorry", and "fine, I will leave."

30. Two hours later, after she was able to think and compose herself, Plaintiff called the Lincoln County human resources office and attempted to rescind her resignation and said she would be to work on Monday. The HR representative said she "would not advise" her to return Monday without discussing it with DA Rushlau (a state employee).

31. Plaintiff requested a meeting with DA Rushlau to talk about her concerns and the fact that she wished to rescind her resignation. He refused, but the HR representative said she and the Lincoln County Administrator would meet with Plaintiff on Wednesday, December 10.

32. Plaintiff asked a lawyer to come to the meeting with her on December 10, 2014. During that meeting she learned that the County Administrator refused her request to withdraw her resignation. Her attorney outlined DA Rushlau's inappropriate questions and comments about a personal relationship and his threat to fire Plaintiff. The HR representative and the County Administrator told Plaintiff they refused to

speak without their attorney present. They also told Plaintiff she could not appeal the decision as it was a "resignation."

33.     Plaintiff's lawyer wrote to the County Administrator on December 10, 2014 to request reconsideration of their decision not to allow Plaintiff to rescind her resignation. Plaintiff never received a response.

## COUNT I
### (Discrimination, Retaliation, and Hostility Claims vs. Lincoln County, State of Maine, and Andrew Wright under MHRA and Title VII)

34.     Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-33 of this Complaint

35.     Based on these allegations, the County, State, and Wright discriminated against Plaintiff with respect to the terms, conditions or privileges of her employment; aided and abetted in the same; unlawfully retaliated against Plaintiff because she opposed unlawful discrimination and harassment; interfered, coerced, intimidated, or threatened Plaintiff while she exercised her statutory civil rights to be free from such discrimination or harassment; subjected her to a sexually hostile work environment that was sufficiently severe and pervasive enough to alter her working conditions; and constructively terminated her employment because of her sex.

36.     Lincoln County engaged in unlawful gender discrimination by treating Plaintiff in disrespectful and demeaning ways, treating her differently than it would treat similarly situated male employees, failing

9

to properly intervene or investigate on her behalf, and constructively terminating her employment based on her sex.

37. The State engaged in unlawful gender discrimination by treating Plaintiff in disrespectful and demeaning ways, treating her differently than it would treat similarly situated male employees, failing to respect administrative and legal protocols regarding supervision and discipline of Plaintiff, and improperly engineering the constructive termination of Plaintiff's employment with Lincoln County.

38. The State created or permitted a sexually hostile work environment and is strictly and vicariously liable for the severe, pervasive, and offensive harassment conducted by its supervisory employee Andrew Wright because such harassment not only adversely affected the terms and conditions of Plaintiff's employment but culminated in Plaintiff's constructive discharge.

39. The State, by or through agents or supervisory employees, including but not limited to Andrew Wright, interfered with Plaintiff's exercise and enjoyment of the rights granted and protected by the MHRA and Title VII and otherwise violated these Acts by, among other acts or omissions, unlawfully discriminating against Plaintiff because she opposed Mr. Wright's unlawful and unwelcome sexual advances and comments. The State also unlawfully and unreasonably interfered with or in Plaintiff's ongoing employment relationship with the County,

improperly coerced her resignation, intimidated her by demanding that she attend a meeting with three state lawyers without discussing the matter or clearling the meeting through the County human resources office, and threatening to terminate her employment if she did not resign.

40. Andrew Wright engaged in unlawful discrimination against Plaintiff by aiding and abetting unlawful discrimination against her and otherwise violating the MHRA, 5 M.R.S. § 4553(10)(D).

41. Andrew Wright interfered with Plaintiff's exercise and enjoyment of the rights granted and protected by the MHRA and Title VII and otherwise violated those Acts by, among other acts or omissions, unlawfully discriminating against Plaintiff because she opposed his unlawful and unwelcome sexual advances and comments. Mr. Wright also unlawfully and unreasonably interfered with Plaintiff's ongoing employment relationship with the County, improperly coerced her resignation (or aided and abetted in the same).

42. The State of Maine, Office of the Attorney General is liable under the MHRA and Title VII because it, with Lincoln County, jointly employed Plaintiff and/or engaged in an integrated enterprise in the course of directing, controlling, and/or managing Plaintiff's employment.

43. As a direct and proximate result of Defendant's actions set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964:

A. An order for Defendant to reinstate Plaintiff to her position, or front pay in lieu of reinstatement;

B. Back pay from December 5, 2014 with prejudgment interest;

C. Compensatory damages including, but not limited to, mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

D. Punitive damages against Wright;

E. An award of reasonable attorney's fees and all costs; and

F. All other damages to which plaintiff may be entitled.

## COUNT II
### (Violation of Plaintiff's Equal Protection and First Amendment Rights via 42 U.S.C. § 1983 vs. Lincoln County, Andrew Wright, Geoffrey Rushlau)

44. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-43 of this Complaint.

45. Based on these allegations, Lincoln County, Andrew Wright, and Geoffrey Rushlau, while acting under color of state law, violated Plaintiff's constitutional rights, including the rights to be free of discrimination based on sex and the First Amendment right to engage in speech opposing unlawful discrimination without retaliation.

46. Defendants acted with actual malice and reckless indifference to Plaintiff's federally protected civil rights.

47. As a result of one or more of the Defendants' unconstitutional conduct, Plaintiff suffered and is continuing to suffer personal injuries, including but not limited to, loss of enjoyment of her job and her life, loss of self-confidence and self-respect, injury to reputation, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, chilling of constitutional and free speech rights, and other pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiff prays for judgment and the following relief under 42 U.S.C §§1983 and 1985:

A. Enter declaratory relief that Defendants, while acting under color of state law, violated Plaintiff's constitutional rights;

B. Award compensatory damages in amounts to be determined at trial and prejudgment interest thereon;

C. Award punitive damages in amounts to be determined at trial and prejudgment interest thereon;

D. Award Plaintiff her full costs, including reasonable attorney's fees and expert fees; and

E. Award such further relief as deemed appropriate.

Dated: August 15, 2016

                              Respectfully Submitted,

                              */s/ James A. Clifford*
                              James A. Clifford
                              Andrew P. Cotter
                              CLIFFORD & CLIFFORD, LLC
                              62 Portland Rd., Suite 37
                              Kennebunk, ME 04101
                              (207) 985-3200