*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *CHASTITY KRAH,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:16-cv-00415-JDL* |
| | ) | |
| *COUNTY OF LINCOLN, MAINE, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*RECOMMENDED DECISION ON STATE DEFENDANTS'*
*MOTION TO DISMISS*

In this employment discrimination action, the State of Maine, Office of the Attorney General ("AG's Office" or "State"), and District Attorney Geoffrey Rushlau (together, the "State Defendants") move to dismiss all of plaintiff Chastity Krah's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to allege the exhaustion of administrative remedies with respect to the AG's Office and failure to state a claim against Rushlau for violation of the plaintiff's constitutional rights. *See* Motion To Dismiss of Defendants State of Maine, Office of the Attorney General, and Geoffrey Rushlau ("Motion") (ECF No. 21) at 1; First Amended Complaint ("FAC") (ECF No. 16) ¶¶ 39-53. For the reasons that follow, I recommend that the court grant the Motion in part, as to all claims against Rushlau, and otherwise deny it.

## I. Applicable Legal Standards

### A. Rule 12(b)(6)

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

1

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## B. Plaintiff's Proffered Extra-Pleading Materials

The plaintiff has appended nine exhibits to her opposing brief, *see* Exhs. 1-9 (ECF Nos. 30-1 to 30-9) to Plaintiff's Opposition to Motion To Dismiss Filed by Defendants State of Maine and Geoffrey Rushlau ("Opposition") (ECF No. 30), only one of which the State Defendants appear to agree is properly considered in connection with this Motion: a copy of the March 23, 2015, Charge of Discrimination ("March 2015 Charge") that the plaintiff filed with the Maine Human Rights Commission ("MHRC") against the County of Lincoln, Maine, *see* Reply Memorandum in Support of Motion To Dismiss of Defendants State of Maine, Office of the

2

Attorney General, and Geoffrey Rushlau ("Reply") (ECF No. 32) at 3 n.1; March 2015 Charge, Exh. 1 (ECF No. 30-1) to Opposition.

The State Defendants note that, in connection with a Rule 12(b)(6) motion to dismiss in an employment discrimination case, *Chatman v. Gentle Dental Ctr. of Waltham*, 973 F. Supp. 228 (D. Mass. 1997), the court declined to consider facts pertaining to exhaustion of remedies that were alleged in the plaintiff's brief and in "papers accompanying the brief[.]"  Reply at 3 (quoting *Chatman*, 973 F. Supp. at 236).  They argue that the plaintiff's extra-pleading materials should meet the same fate.  *See id.*

However, *Chatman* sheds little light on the documents here at issue.  Facts contained only in a party's brief by definition do not fall within the "narrow exception" described by the First Circuit, *Alternative Energy*, 267 F.3d at 33, and the *Chatman* court did not describe the nature of the "papers" accompanying the brief apart from the plaintiff's charge of discrimination, which the court *did* take into account on the basis that it was "a public record and is also referred to in the complaint[,]" *Chatman*, 973 F. Supp. at 231 n.6, 236.

In accordance with the *Alternative Energy* test, I determine that four exhibits besides Exhibit 1, which contains the March 2015 Charge, should be taken into account.  The following exhibits are sufficiently referenced in the FAC, and their authenticity is not in dispute, *see Alternative Energy*, 267 F.3d at 33 ("When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss."):

1.      Exhibit 6, a copy of a December 23, 2015, charge of discrimination that the plaintiff filed with the MHRC against the State of Maine ("December 2015 Charge"), *see* Exh. 6 (ECF No. 30-6) to Opposition, which, together with Exhibits 7 and 8, is referenced in FAC ¶ 38;

2.      Exhibit 7, a copy of a letter dated December 23, 2015, from [plaintiff's counsel] James A. Clifford to Amy Sneirson, Esq., Executive Director of the MHRC ("Clifford Letter"), addressing the State's anticipated statute of limitations defense with respect to the December 2015 Charge, *see* Exh. 7 (ECF No. 30-7) to Opposition, which, together with Exhibits 6 and 8, is referenced in FAC ¶ 38;

3.      Exhibit 8, a copy of a letter dated March 4, 2016, from Sneirson to Susan Herman, Deputy Attorney General, Linda McGill, Esq., and Clifford ("Sneirson Letter"), stating that the MHRC would treat the December 2015 Charge as an amendment to the existing complaint and would not dismiss it as untimely at that point, *see* Exh. 8 (ECF No. 30-8) to Opposition, which, together with Exhibits 6 and 7, is referenced in FAC ¶ 38; and

4.      Exhibit 9, containing copies of two letters dated March 28, 2016, from Sneirson to the plaintiff, the first of which is a Notice of Right To Sue ("Right-To-Sue Letter"), *see* Exh. 9 (ECF No. 30-9) to Opposition, referenced in FAC ¶ 9.

The remaining exhibits are neither referenced in the FAC, central to the plaintiff's claim, nor characterized by either side as official public records. Hence, they have not been considered.

## II.  Factual Background

The FAC sets forth the following relevant factual allegations.[1]

The plaintiff was employed as a Victim Witness Advocate by Lincoln County between April 2008 and December 5, 2014. FAC ¶ 2. The AG's Office is a department of state government and employed defendants Rushlau and Andrew Wright. *Id*. ¶¶ 5, 7. Rushlau serves as the District

---

[1] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id*. "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id*. (citation and internal quotation marks omitted).

Attorney for Prosecutorial District Number 6, comprising the counties of Knox, Lincoln, Sagadahoc, and Waldo.  *Id*. ¶ 6.  He is an employee of the State of Maine ("State") and serves under the general authority of 30-A M.R.S.A. § 256.  *Id*.  Wright served as an Assistant District Attorney between 2005 and July 2015.  *Id*. ¶ 7.  Until his separation from employment in July 2015, he was an employee of the State and served under the general authority of 30-A M.R.S.A. § 272.  *Id*.

While the plaintiff was employed by Lincoln County, she was at all material times working under the direction, supervision, and control of Rushlau and Wright.  *Id*. ¶ 13.  Wright supervised the plaintiff at the District Attorney's Office ("DA's Office") in Wiscasset, Maine.  *Id*. ¶¶ 12-13.

In late 2012 and early 2013, the plaintiff had a brief relationship with an attorney from the Mid-Coast area.  *Id*. ¶ 14.  The plaintiff and this attorney were not involved in cases together.  *Id*. During this time, people in the DA's Office, including Wright, knew that the plaintiff was "seeing" this attorney.  *Id*.  At no point did the County Administrator's Office or the DA's Office question or object to the relationship.  *Id*.

Wright began teasing the plaintiff about the relationship and made inappropriate comments around her co-workers.  *Id*. ¶ 15.  He texted the plaintiff while she was working and asked her if she was sleeping with that person.  *Id*.  The plaintiff refused to answer and asked him to stop.  *Id*. Prior to the time the plaintiff's relationship with the attorney ended, Wright began making unwelcome sexual advances toward her and directed inappropriate sexually charged comments at her.  *Id*. ¶ 16.  Wright became ill in the fall of 2013 and stopped contacting the plaintiff, but resumed making sexually inappropriate comments to her when he recovered in the spring of 2014. *Id*. ¶ 17.

In the spring of 2014, Wright pressured the plaintiff to engage in sexual acts with him in the workplace. *Id*. ¶¶ 18-22. The plaintiff believed that there was no one at the office in whom she could confide or felt she could trust. *Id*. ¶ 21. She felt humiliated and degraded and deeply regretted the sexual encounters with Wright. *Id*. She pleaded with Wright many times to stop, repeatedly asked him to leave her alone, and told him she had no interest in a romantic relationship. *Id*. ¶ 22. By the early summer of 2014, Wright relented after the plaintiff continued to ignore him. *Id*. ¶ 24. However, the plaintiff quickly noticed that he was treating her differently, and she felt uncomfortable because she perceived him to be quite angry with her. *Id*.

One of the plaintiff's colleagues informed her that Wright had told her that the plaintiff was a liar and wrote other hurtful things about her in text messages to that colleague. *Id*. The colleague also told the plaintiff that Wright had repeated things the plaintiff had told him in confidence to everyone else in the office. *Id*.

The plaintiff emailed the Deputy District Attorney in late June or early July 2014 and informed him of Wright's comments to her coworker, how upset she was, and that she was ready to quit. *Id*. ¶ 25. The plaintiff asked him to do something. *Id*. He responded that he would "discuss this with the Assistant District Attorney," but the work environment remained tense for weeks. *Id*.

At the Maine prosecutors' conference in October 2014, Wright began texting the plaintiff again. *Id*. ¶ 26. The plaintiff asked him to stop and ignored him. *Id*. Both nights of the conference, Wright banged on the plaintiff's door very late, and she pretended not to hear him. *Id*. ¶ 27.

In the fall of 2014, Rushlau authorized Wright to direct or conduct a search of the plaintiff's work computer. *Id*. ¶ 29. On December 5, 2014, Rushlau asked the plaintiff to meet with him in the back office of the Wiscasset DA's Office. *Id*. ¶ 30. Wright and another Assistant District

Attorney also were there. *Id*. Rushlau immediately accused the plaintiff of lying about her relationship two years earlier with the Mid-Coast attorney, saying that she had lied about sleeping with him and, for two years, had had an ongoing relationship with that same attorney. *Id*. Rushlau pulled out a draft of a very personal letter obtained as a result of Wright's search, which the plaintiff had drafted but never sent to the Mid-Coast attorney whom she had dated two years earlier. *Id*. ¶ 31.

The plaintiff was stunned and embarrassed. *Id*. ¶ 32. Rushlau told her that if she did not resign he would dismiss her immediately. *Id*. She could manage to say only that she was sorry and would leave. *Id*. Two hours later, after she was able to think and compose herself, the plaintiff called the Lincoln County Human Resources ("HR") Office and attempted to rescind her resignation, saying that she would be at work that Monday. *Id*. ¶ 33. The HR representative said that she would not advise her to return to work without discussing it with Rushlau. *Id*.

The plaintiff requested a meeting with Rushlau to talk about her concerns and the fact that she wished to rescind her resignation. *Id*. ¶ 34. He refused, but the HR representative stated that she and the Lincoln County Administrator would meet with the plaintiff on December 10, 2014. *Id*. During the December 10 meeting, which the plaintiff attended with a lawyer, the County Administrator refused her request to withdraw her resignation. *Id*. ¶ 35. The plaintiff's attorney outlined Rushlau's inappropriate questions and comments about a personal relationship, the fact that a document was retrieved from the plaintiff's computer, and his threat to fire the plaintiff if she did not resign. *Id*. The HR representative and the County Administrator told the plaintiff that they refused to speak without their attorney present, and that she could not appeal the decision because she had resigned. *Id*.

The plaintiff's lawyer wrote to the County Administrator on December 10, 2014, to request reconsideration of the decision not to allow her to rescind her resignation. *Id.* ¶ 36. The plaintiff never received a response. *Id.*

The plaintiff filed the March 2015 Charge against Lincoln County with the MHRC. *Id.* ¶ 37. The charge included a detailed narrative summarizing her claims and the people involved. *Id.* After the plaintiff discovered that Rushlau and Wright were State employees, she amended her charge on December 23, 2015, to include the State as a respondent. *Id.* ¶ 38.

In the Clifford Letter accompanying the December 2015 Charge, the plaintiff's counsel argued that, although the charge against the State was filed more than 300 days after the last act of discrimination, the MHRC should equitably toll the statute or determine pursuant to Maine Rule of Civil Procedure 15 that the new charge related back to the original. *See* Clifford Letter at 2-3. He added that he believed that all claims against Lincoln County would apply against the State on either an "integrated enterprise" theory, which he contended "would permit a relation back[,]" or a "joint-employer" relationship. *Id.* at 3.

The MHRC ruled that the plaintiff could not invoke the doctrine of equitable tolling but stated:

> It appears, however, that Complainant *may* be able [to] establish that the County and the State are an integrated enterprise for employment purposes; if so, she should be allowed to amend her complaint to name the State, and her amendment would relate back to her initial filing. This might be the case if there is a "substantial identity" between the party omitted and the party originally named.
>
> ***
>
> Because we do not yet have information that would allow a decision regarding the existence of an "integrated enterprise" here, Complainant's filing will be considered as an amendment to the existing complaint and will not be dismissed as untimely at this point. However, if Complainant ultimately cannot demonstrate the existence of an integrated enterprise, her claims against the State will be dismissed as untimely.

8

Sneirson Letter at 2-3 (citation omitted) (emphasis in original).

On March 28, 2016, the MHRC issued the plaintiff a notice of her right to sue.  *See* Right-To-Sue Letter.  The plaintiff filed the instant suit on August 15, 2016.  *See* Complaint and Jury Trial Demand ("Original Complaint") (ECF No. 1).

### III.  Discussion

The plaintiff brings discrimination, retaliation, and hostile work environment claims against the State pursuant to the Maine Human Rights Act ("MHRA") and Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I), *see* FAC ¶¶ 39-40, 42-45, and claims against Rushlau pursuant to 42 U.S.C. § 1983 for violation of her federal constitutional rights to freedom from gender-based discrimination and equal protection under the law (Count II), *see id*. ¶¶ 48, 51-52. The State seeks dismissal on the basis that the plaintiff does not allege, nor can she, that she exhausted her administrative remedies by filing a timely charge against it with either the MHRC or the Equal Employment Opportunity Commission ("EEOC"), and Rushlau seeks dismissal on the basis that she fails to state a plausible claim that he violated her constitutional rights and, in any event, he is entitled to qualified immunity.  *See* Motion at 5.

I agree that the plaintiff fails to state a plausible claim against Rushlau but conclude that the State's bid to dismiss the claim against it is premature.

### A.  State:  Failure To Exhaust Administrative Remedies

As the State points out, *see* Motion at 6, Maine is a "deferral state" for purposes of Title VII, meaning that aggrieved persons may pursue their administrative charges with the MHRC, *Doyer v. RSU 16*, No. 2:14-cv-00025-JAW, 2014 WL 4100942, at *5 (D. Me. Aug. 18, 2014) (citation and internal quotation marks omitted).  Thus, for purposes of both the MHRA and Title

VII, a charge must be filed with MHRC within 300 days of the alleged act of discrimination.  *See id.;* 42 U.S.C. § 2000e-5(e)(1); 5 M.R.S.A. § 4611.

A failure to file a timely charge bars any subsequent Title VII litigation, *see, e.g., Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 3 (1st Cir. 2001), and limits the remedies available pursuant to the MHRA, *see, e.g.*, 5 M.R.S.A. § 4622(1).

The State contends that, because the plaintiff did not name it as a respondent with respect to her MHRC charge until December 23, 2015, 383 days after she resigned her employment on December 5, 2014, she is barred from bringing any Title VII claims against it and precluded, as a practical matter, from bringing any MHRA claims because the remedies still available to her could be provided only by her former employer, Lincoln County.  *See* Motion at 6-7.

The plaintiff rejoins that she did file a charge of discrimination against the State, which the MHRC accepted as amending, and relating back to, her March 2015 Charge, and that the MHRC subsequently issued a right-to-sue letter.  *See* Opposition at 7.  She adds that the State had sufficient notice of her claims and chose to participate in the litigation, and that she has stated sufficient facts to show that the State and County jointly employed her and/or were part of an integrated enterprise. *See id.* at 9-13.

The State does not dispute that the MHRC accepted the tardy charge but argues that the court is not bound by its allegedly flawed reasoning.  *See* Reply at 1-2.  It contends that the MHRC wrongly focused on a joint employer/integrated enterprise analysis when, in fact, the pertinent test for purposes of the timeliness of the filing of an administrative charge is the so-called "substantial identity," or "identity of interest," test, pursuant to which "the failure to name a party as a respondent in an administrative charge of discrimination is not fatal to a later lawsuit against that party, so long as the charge was sufficient to give the party notice and the party had an opportunity

to conciliate the charge at the administrative level." *Id*. at 2-3 (quoting *Chatman*, 973 F. Supp. at 235).

The State argues that, as in *Chatman*, the FAC contains no allegations from which the court can infer that the State had notice and an opportunity to conciliate at the MHRC. *See id*. at 3. In the alternative it contends that, even if one takes into consideration the plaintiff's allegations and documents bearing on its involvement at the MHRC, that evidence shows that it did not have a substantial identity of interest with the County and did not have an opportunity to conciliate at the administrative level. *See id*. at 3-4.[2]

*Chatman* is materially distinguishable in that the plaintiff in that case never named the defendants at issue in her administrative charge of discrimination. *See Chatman*, 973 F. Supp. at 232-33. Thus, she could not state a plausible claim against them absent factual allegations tending to show that she met the exception the court ruled was applicable – the substantial identity/identity of interest test. *See id*. at 236. Because it was not possible to determine, from the facts properly before the court on the motion to dismiss, whether the plaintiff could meet that test, the court granted the motion as to those defendants but afforded the plaintiff an opportunity to amend her complaint to attempt to state a claim against them. *See id*.

In this case, by contrast, the plaintiff alleges that she amended her charge on December 23, 2015, to include the State as a respondent, and that the MHRC issued a right-to-sue letter. *See* FAC ¶¶ 9, 38. This, in itself, suffices to state a plausible claim against the State for purposes of the need to exhaust administrative remedies. Nothing in the exhibits properly considered in conjunction with the Opposition alters that picture. The exhibits confirm that the MHRC permitted

---

[2] The State observes in passing that the plaintiff named the State of Maine in her amended charge rather than the defendant named in this lawsuit, the State of Maine, Office of the Attorney General. *See* Motion at 7 n.3. However, it makes no argument that this has any bearing on the instant analysis. *See id*.

the late amendment, subject to possible later dismissal for untimeliness unless the plaintiff met what the MHRC viewed as the applicable test for an exception to the 300-day rule. *See* Sneirson Letter at 3. Regardless of whether the MHRC focused on the wrong test, it permitted the retroactive amendment. *See* Sneirson Letter at 3. Insofar as appears, it never had occasion to rule on the applicability of the test: it issued its right-to-sue letter within days of its decision permitting the amendment. *See* Right-To-Sue Letter.

Accordingly, it is plausible that the plaintiff can show that she exhausted her administrative remedies as to the State. Whether she succeeds in demonstrating that she meets an applicable test for an exception to the 300-day rule is a matter to be determined at a later stage of this litigation, with the benefit of considered argument, encompassing the question of which test applies, and an opportunity for discovery. *See, e.g., Ramirez v. DeCoster*, No. 2:11-cv-00294-JAW, 2012 WL 2367179, at *16 (D. Me. June 21, 2012) (denying defendants' motion to dismiss for failure to exhaust administrative remedies as to defendants omitted from MHRC charge but named in cover letter transmitting charge; observing, "The Court will not, at the motion to dismiss stage with a limited record before it, engage in an overly technical reading of the MHRC and EEOC Charges. It is sufficient that in the combined cover letter and Charge all of the Defendants were named, especially in light of the allegations that these Defendants constituted an integrated enterprise all under the common control of Mr. DeCoster.").

For these reasons, I recommend that the court deny the motion to dismiss as to the State.

### B. Rushlau: Failure To State a Claim of Constitutional Violations

Rushlau argues for dismissal of the claims against him on the bases that, (i) in considering whether the FAC states a claim, the court should take into account two allegations of the original complaint, (ii) regardless of whether the court does so, the FAC fails to state a claim against him

for either gender-based disparate treatment or supervisory liability, and (iii) he is entitled to qualified immunity. *See* Motion at 8-20. I decline to take into consideration allegations of the original complaint but agree that the FAC nevertheless fails to state a claim against Rushlau, as a result of which he is entitled to qualified immunity. Accordingly, I recommend the dismissal of the FAC as to him.

### 1. Allegations of Original Complaint

The plaintiff filed the FAC, as of right as to the State Defendants, following their filing of a prior motion to dismiss the original complaint pursuant to Rule 12(b)(6). *See* Original Complaint; Motion To Dismiss of Defendants State of Maine, Office of the Attorney General, and Geoffrey Rushlau ("Prior Motion") (ECF No. 11); Report of Hearing and Order re: Status of First Amended Complaint (ECF No. 31).

Rushlau asks the court to take note of two changes, *see* Motion at 8-9:

1.      While the plaintiff originally alleged that she "had a brief relationship with an attorney from the Mid-Coast area *who was well known in the District Attorney's office*[,]" Original Complaint ¶ 12 (emphasis added), she revised that allegation to state that she "had a brief relationship with an attorney from the Mid-Coast area[,]" FAC ¶ 14, after Rushlau argued in the Prior Motion that the allegation of the Original Complaint left little doubt that the attorney in question was a criminal defense attorney who regularly worked on cases prosecuted by the Lincoln County DA's Office, and that a relationship between such an attorney and a Victim Witness Advocate in that office would present an obvious conflict, *see* Prior Motion at 8 & n.3.

2.      While the plaintiff originally alleged that Wright "misled and manipulated his boss, Defendant Geoffrey Rushlau . . . and sabotaged [her] employment[,]" Original Complaint ¶ 1, she revised that allegation to state that Wright "misled *and conspired with* his boss, Defendant

Geoffrey Rushlau . . . *to sabotage* [her] employment[,]" FAC ¶ 1 (emphasis added), after Rushlau

cited the original allegation in support of an argument that the original complaint was devoid of

allegations tending to show that he harbored discriminatory intent or had any knowledge of

Wright's alleged sexual harassment, *see* Prior Motion at 7, 11.

Rushlau acknowledges the general rule that "[a]n amended complaint, once filed, normally

supersedes the antecedent complaint."  Motion at 9 (quoting *ConnectU LLC v. Zuckerberg*, 522

F.3d 82, 91 (1st Cir. 2008)).  However, he notes that some federal courts in other circuits, including

the United States Court of Appeals for the Second Circuit, have held that an exception exists when

a "plaintiff blatantly changes his statement of the facts in order to respond to the defendant's

motion to dismiss . . . and directly contradicts the facts set forth in his original complaint[.]"  *Id*.

(quoting *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ 0400(NRB), 2008 WL 4386764,

at *6 (S.D.N.Y. Sept. 24, 2008) (citation and internal punctuation omitted)).  In that situation, he

observes, these courts have held that "a court is authorized to accept the facts described in the

original complaint as true."  *Id*. at 9-10 (quoting *Colliton*, 2008 WL 4386764, at *6) (citation and

internal quotation marks omitted).  He points out that *Colliton*'s progeny include *Rishikof v.

Mortada*, 70 F. Supp.3d 8 (D.D.C. 2014), in which the court rejected a plaintiff's "attempt to

circumvent the clear allegations in his Complaint[,]" and *Fernandez v. School Bd. of Miami-Dade

Cty.*, 201 F. Supp.3d 1353 (S.D. Fla. 2016), in which the court refused to take cognizance of facts

in an amended complaint "where plaintiffs ha[d] manipulated the allegations in their pleadings to

avoid a dispositive defense."  *Id*. at 10-11 (quoting *Rishikof*, 70 F. Supp.3d at 14; *Fernandez*, 201

F. Supp.3d at 1361 n.1).

In the absence of any indication that the First Circuit would follow the *Colliton* line of

cases, I decline to do so.  Rushlau acknowledges that, in *ConnectU*, the First Circuit ruled that the

allegations of the plaintiff's complaint as amended as of right, claiming federal question jurisdiction, rather than its original complaint, claiming diversity jurisdiction, controlled for purposes of the defendants' motion to dismiss for lack of subject matter jurisdiction.  *See* Motion at 11; *ConnectU*, 522 F.3d at 96.  However, he distinguishes *ConnectU* on the basis that the First Circuit was careful to say that an amended complaint "normally" supersedes the antecedent complaint, and that *ConnectU* involved a change in the alleged basis for jurisdiction rather than in the pleaded facts.  *See* Motion at 11 & n.5 (quoting *ConnectU*, 522 F.3d at 91).

Rushlau further notes that, in *InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003), in response to a defendant's argument that a plaintiff was judicially estopped from disclaiming admissions made in its original complaint, the First Circuit held that judicial estoppel was unavailable when the plaintiff "gained . . . no advantage from its original pleading" because no substantive ruling had been made, as a result of which it had not "secured a favorable decision" based on that pleading.  *Id*. at 11-12 (quoting *InterGen*, 344 F.3d at 144).  In those circumstances, he observes, the *InterGen* court stated, "We would not want to institute a rule that unduly inhibits a plaintiff from appropriately adjusting its complaint either to correct errors or to accommodate facts learned during pretrial discovery."  *Id*. at 12 (quoting *InterGen*, 344 F.3d at 144).

He argues that in this case, by contrast, no discovery has taken place, and the changes bear the hallmarks of manipulation, not error.  *See id*.  Therefore, he contends, the adoption of the *Colliton* exception would not be contrary to First Circuit precedent.  *See id*.

However, nothing in *ConnectU* or *InterGen* suggests that the First Circuit would adopt that exception.  In both, the First Circuit was careful to reaffirm the general rule that an amended pleading supersedes a prior one.  *See, e.g., ConnectU*, 522 F.3d at 93 ("After all, the plaintiff is both the author and the master of its complaint.  As such, it has the power to decide what law it

will rely upon.  We think that principle extends to a plaintiff's decision as to which causes of action

to bring and what jurisdictional arguments to press.") (citations and internal punctuation omitted);

*InterGen*, 344 F.3d at 144-45 (While *InterGen* case was "a poor candidate for judicial estoppel[,]"

"[t]hat is not to say that statements made in a superseded complaint are null and void for all

purposes.  Under certain circumstances, such statements may be party admissions, usable as such

despite subsequent amendment of the complaint.  That does not mean, however, that a plaintiff is

strictly bound by its initial complaint.  An amended complaint supersedes the original complaint,

and facts that are neither repeated nor otherwise incorporated into the amended complaint no

longer bind the pleader.") (citations omitted).

Accordingly, I decline to look to the two passages of the superseded complaint that Rushlau

highlights.  Nonetheless, I agree that the FAC fails to state a claim against him for gender-based

discrimination or supervisory liability.

## 2.  Gender-Based Discrimination

Although, as the plaintiff points out, *see* Opposition at 16, she need not plead facts

sufficient to make out a *prima facie* case, allege all facts necessary to succeed at trial, or provide

direct evidence of causation, "the elements of a prima facie case are relevant to the plausibility

assessment, forming part of the background against which a plausibility determination should be

made[,]" *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014).

"Discrimination on the basis of sex violates the equal protection clause if such

discrimination does not serve important governmental objectives and is not substantially related

to achievement of those objectives."  *Lipsett v. University of P.R.*, 864 F.2d 881, 896 (1st Cir.

1988) (citation and internal quotation marks omitted).  "To prove a violation of the equal protection

clause, a plaintiff must show that the defendant acted with discriminatory intent."  *Id.*  Sex

discrimination occurs when "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 258-59 (1st Cir. 1999) (citation and internal quotation marks omitted). "To state a claim for relief, a complaint asserting sex discrimination must plausibly allege that the plaintiff experienced an adverse employment action taken on the basis of her gender." *Morales-Cruz v. University of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012).

Rushlau argues that, although the plaintiff alleges that he took certain actions against her because of her gender, she pleads no factual content supporting a reasonable inference that he acted with discriminatory intent. *See* Motion at 13. He notes that the only actions he is alleged to have taken are authorizing Wright to direct or conduct a search of her work computer, confronting her with evidence that she had engaged in an intimate relationship with an attorney and previously lied about it to him, and telling her that she could resign or be dismissed for lying about her relationship with the attorney. *See id.* He contends that this reveals no discriminatory animus. *See id.*

He notes that the "primary job function" of a government victim witness advocate "is to advise, counsel or assist victims or witnesses of crimes, to supervise other employees or volunteers who perform that function or to administer the program." *Id.* at 13-14 (quoting 16 M.R.S.A. § 53-C(1)(C)). He posits that a close personal relationship between a victim witness advocate and a local attorney would have to be disclosed to the District Attorney in order to avoid potential conflicts of interest, or the appearance of such conflicts to victims, witnesses, the criminal defense bar, and the public. *See id.* at 14. He adds that the plaintiff pleads no factual content allowing a reasonable inference that he (i) treated her differently than he would treat male subordinate employees or (ii) conspired with Wright, let alone had knowledge of Wright's alleged sexual harassment of her. *See id.* at 15-16.

17

The plaintiff rejoins that, for purposes of a Rule 12(b)(6) motion, she need only plead facts sufficient to show that her gender discrimination claim has substantive plausibility.   *See* Opposition at 16.   She observes that she can rely on "telltale clues . . . gathered from the circumstances surrounding the adverse employment action."   *Id.* (quoting *Medina-Velázquez*, 767 F.3d at 111) (citation and internal quotation marks omitted)).   She adds that the court is required "to evaluate the cumulative effect of the factual allegations."   *Id.* (quoting *Ocasio-Hernández*, 640 F.3d at 14).

She argues that she musters sufficient telltale clues in the form of her allegations that Rushlau authorized Wright to conduct a search of her work computer, levied false accusations at her regarding her purported sexual relationship, embarrassed her in front of two District Attorneys, compelled her to resign her employment, and refused to meet with her to discuss the rescission of her resignation.   *See id.*; FAC ¶¶ 29-32, 34.

She contends that, from these telltale clues, one can conclude that Rushlau (i) authorized Wright to search her computer with the intent of finding highly personal evidence of her sexual activity without consulting HR or her beforehand, (ii) intentionally disregarded the impropriety of falsely accusing her of certain sexual activity in front of two male Assistant District Attorneys without consulting HR or having an HR representative present, (iii) felt no need to consult HR or conduct an investigation prior to intentionally forcing her to resign, and (iv) intentionally disregarded her pleas to discuss the withdrawal of her resignation after she overcame the embarrassment of being ambushed about her sex life by three supervising attorneys.   *See* Opposition at 16-17.   She argues that, taken as a whole, these allegations allow for a reasonable inference that Rushlau had the requisite discriminatory animus: that her sex was a motivating

factor in his treatment of her.  *See id.*  She asserts that this is true regardless of whether or not Rushlau acted in concert with Wright.  *See id.*

Nonetheless, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  *Morales-Cruz*, 676 F.3d at 224 (citation and internal quotation marks omitted).  That is the case here.  The plaintiff's telltale clues center on the fact that the subject matter of the search of her computer and her compelled resignation was sexual in nature.  Plainly, if the plaintiff had alleged that Rushlau authorized a search related to purported falsified time records and compelled her resignation for purported lies about record-keeping, the FAC would not state a claim against Rushlau for gender discrimination. The plaintiff sets forth no factual basis from which one can infer that Rushlau knew of Wright's alleged sexual harassment of her.  The mere facts that he authorized a search regarding her purported sexual relationship and compelled her to resign based on her purported lies about that relationship do not, standing alone, raise a plausible inference that her gender was a motivating factor in his conduct.  One would have to speculate that this was so.  *See id.* at 225 (complaint failed to state claim for gender discrimination based on gender stereotyping when "the allegation that [the plaintiff] was held to a different standard because she was a woman d[id] not follow from any *factual* content set out in the pleading or any reasonable inference therefrom") (emphasis in original).

### 3.  Supervisory Liability

For similar reasons, the plaintiff fails to state a claim of supervisory liability against Rushlau.  "Supervisory personnel are liable under § 1983, upon a showing of a constitutional violation, when: (1) the supervisor's conduct or inaction amounts to either deliberate, reckless or callous indifference to the constitutional rights of others, and (2) an affirmative link exists between

the street-level constitutional violation and the acts or omissions of the supervisory officials." *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1231 (D. Me. 1996). "An important factor in making the determination of liability is whether the official was put on some kind of notice of the alleged violations, for one cannot make a 'deliberate' or 'conscious' choice to act or not to act unless confronted with a problem that requires the taking of affirmative steps." *Lipsett*, 864 F.2d at 902 (citation omitted). The FAC is devoid of any well-pleaded factual allegations from which one could draw a reasonable inference that Rushlau knew, or had reason to know, of Wright's alleged sexual harassment of the plaintiff. The FAC, thus, fails to make out a plausible claim against Rushlau of supervisory liability pursuant to section 1983.

### 4.   Qualified Immunity

The plaintiff's failure to state plausible claims against Rushlau entitles him to qualified immunity. *See Guzmán-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.") (citation and internal quotation marks omitted).

### IV. Conclusion

For the foregoing reasons, I recommend that the court **GRANT** the State Defendants' motion to dismiss with respect to all claims against Rushlau and **DENY** it as to all claims against the State.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 2nd day of April, 2017.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge